In May 1784, the superior court of law, for the district of Edenton, in North Carolina, granted letters testamentary “to Edward Rice, the executor named in William Savage’s last will and testament; which was proved in open court bj the oath of one of the subscribing witnesses; and the executor took the oath of qualification, and returned an inventory of part of the testator’s estate.”
At the succeeding term in November, of the same court, “on the motion of Mr. Johnston, on the affidavit of Mary Draper, suggesting undue practices in procuring the execution of the will of Doctor William *663 Savage, deceased, in his last illness,” it was “ordered that the probate of a paper purporting to be the last will and testament of Doctor William Savage, deceased, obtained at the last term, be set aside, unless the executors named in the said will shew sufficient cause to the contrary on Monday next.”
On the return of the rule, the executors appeared; and “the court having heard and fully understood the allegations and proofs, as well on the part and behalf of the executors, as on the part of Samuel Dickinson, Walter Jones, and William Hood, at whose instance the rule was obtained, and the counsel on both sides being fully heard, are unanimously of opinion, that though it does not appear to the court, that any fraud or imposition was practised in obtaining the said paper purporting to be a will, yet it fully appears, from the evidence and the whole circumstances laid before the court, that the said Savage, at the time of making and executing the said paper, purporting to be a will and testament as aforesaid, from the low state of his mind, at that time, was incapable of making a last will and testament. And therefore, the court doth order, adjudge and decree, *that the probate of the said will be revoked, annulled, and set aside; and the paper purporting to be a will as aforesaid, be considered and declared to be null, void and of no effect.”
Whereupon, another will of the said William Savage, deceased, was exhibited by Doctor Samuel Dickinson, one of the executors named in the said will; and there being no subscribing witness to the same, it was proved by the oaths of two witnesses, that the whole of the said will, as well as the signature, was in the handwriting of the said William Savage, deceased; and thereupon, Dickinson qualified as executor, and obtained letters testamentary.
In April 1785, Rice exhibited the first named will to the general court of Virginia for probate there: which Walter Jones opposed, and produced a copy of the record of the proceedings aforesaid in the court of North Carolina, in support of his opposition to the said probate; and thereupon the general court made the following order, “the court here, on hearing what could be alleged by the counsel on both sides, not being advised as to their jurisdiction herein ; and being of opinion, that it is a case of difficulty and novelty, do adjourn the same to the court of appeals.”
On the part of Rice, it was insisted, that, as the will respected lands lying in Virginia, the court of North Carolina had not jurisdiction as to those lands; but that the question of probate with regard to them, belonged exclusively to the courts of Virginia; for no country assumes jurisdiction over the lands of another: and that the lands lie in another state out of the jurisdiction of the court in which the action is brought, is always a good plea in abatement. That therefore, whether the lands in Virginia were devised, or not, was a question which necessarily belonged to the courts here to decide; and, of course, the sufficiency of all instruments to pass them. Consequently, that the question, on the will, so far as related to those lands, was coram non judice, in the court of North Carolina; and therefore, that the *gene'ral court ought to have received probate of the will, notwithstanding the North Carolina judgment.
Ror Jones, on the other hand, it was urged, that as the testator lived in North Carolina, whether the paper produced was his will or not, emphatically belonged to the courts of that state to decide; and, as the competent tribunal there pronounced it void, on account of the incapacity of the testator to make it, the decision was conclusive, and barred all further enquiry. That it is not universally' true, that every question relating to lands, in a foreign country, must be decided by the courts of that country: for events may arise, which may incidentally, bring the instrument conveying them into controversy in another country; as, if the deed was obtained by fraud, and a bill in chancery were brought to set it aside, on account of the fraud, it would be competent to the court to declare the writing void for misconduct in the grantee, although the lands did not lie within the jurisdiction of the court, as fraud vitiated the instrument every where, and the courts of all countries were competent to decide upon it. That, with respect to the other property, mentioned in the will, it was admitted the Carolina court had complete jurisdiction ; and it was novel doctrine to say, that an instrument declared void on account of fraud by one court, could be resuscitated by another, which, in the main, admitted the rectitude of the decision made by the annulling court.
The judgment of the court of appeals was as follows:
“The court this day gave their opinion, that the general court are not restrained from receiving any will, by which, lands, lying in this state, are devised, so far as the title of lands may be affected, although the same will may have been declared void by any court in any other of the United States, for any cause whatever.”